No. 16,396.

LAMPTON ET AL. *v.* McINTOSH.
(225 P. [2d] 54)

Decided November 13, 1950.

Messrs. MABRY, MABRY & MABRY, for plaintiffs in error.

Mr. FRANK H. HALL, for defendant in error.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

BLOYCE H. LAMPTON and Amelia Lampton brought an action against Henry McIntosh to obtain a judgment requiring defendant to convey to them certain property then occupied by plaintiffs under a lease and option. Trial was had to the court, and judgment was entered in favor of defendant, to review which plaintiffs have sued out a writ of error.

We will refer to the parties hereto as plaintiffs and defendant, as those positions were taken by them in the district court, or by their proper names.

In the complaint it is alleged that defendant, being the owner of certain lands in Las Animas county, Colorado, on May 1, 1943, leased the same to plaintiffs for a period of five years upon the payment to him of the sum of seventy-five dollars annually. The written lease contained the following provision: "It is further agreed that this lease is not subject to subleasing, and this lease and all of its terms and conditions are subject to the right of sale by the owner, but the tenants shall have the first right to purchase said premises upon the same terms and conditions as shall be offered to any other prospective purchaser, but in the event that the same is sold to a purchaser other than the tenants, the tenants shall have the absolute right to the use and occupancy of these lands until the end of the then current lease year." It further is alleged that in violation of the preceding provision, defendant failed and refused to sell the land to plaintiffs during the term of said lease and in violation of his agreement.

In the answer, the execution of the lease with option provision therein is admitted, and full compliance therewith by defendant is alleged.

It also is alleged that plaintiffs failed and refused to exercise their option and purchase the lands in said lease described after having been notified by defendant that he had an offer for the premises in the lease described for the sum of $5000, whereupon the leased premises were sold to others.

At the trial, and before any evidence whatever was introduced, the following occurred:

"Mr. Mabry: Your Honor, I believe the issues in this case are narrowed to the question of *whether there was a renewal of the lease,* Exhibit A, and plaintiffs *had an opportunity to purchase the property and declined to do so.* I believe everything else is agreed upon in the pleadings. Is that the way you understand it, Mr. Hall?

"Mr. Hall: I think that is all." (Emphasis supplied)

As to the renewal of the lease, the record discloses the following:

"Mr. Hall: If your Honor please, in view of the testimony of Mr. McIntosh, we will admit, in January, there was an agreement between these parties, to extend the lease for an additional period of five years, under the exact terms, except the rental should be $125.00 a year, instead of $75.00.

"The Court: All right.

"Mr. Mabry: Five years from the date of the expiration of the other lease?

"Mr. Hall: Five years from May 1, 1948."

The above admission considered, the only question remaining for the trial court's determination was, as plaintiffs' counsel stated, and defendant's counsel conceded, whether, "plaintiffs had an opportunity to purchase the property and declined to do so."

Henry McIntosh, called as a witness for cross-examination, testified that during his ownership of the property, and more especially since 1943, when the original

lease was entered into between himself and plaintiffs, he had consistently tried to find a purchaser for the leased premises for the sum of $5000; that he had offered the same to plaintiffs for that amount in 1947, and his offer was declined. He further testified that one Zele had, over a period of years, been interested in the purchase of the property, and sometime in early 1949 Zele had offered to purchase the property for the sum of $5000, and, upon the offer being received, defendant stated to the prospective purchaser that under the terms of his lease it would be necessary to give plaintiffs the opportunity of purchasing the property for that sum, and in event they declined to do so, he would convey the same to Zele. He testified that sometime the latter part of January, or early February, 1949, he made a trip from Pueblo to his leased land, and then and there fully apprised the plaintiffs of Zele's offer and inquired of them if they desired to purchase the property upon the terms and conditions as were offered by Zele, and that plaintiffs then and there refused to purchase the property, whereupon defendant entered into a contract to sell the same to Zele and notified plaintiffs of said sale by letter under date of February 22, 1949, giving plaintiffs the right to occupancy of the premises until June 1, 1949. Plaintiffs, without answering defendant's letter, or otherwise communicating with him with reference to the sale of his property, commenced this action by filing a complaint in the district court on April 1, 1949.

Plaintiffs, when called as witnesses, denied that defendant had, in the latter part of January or early February, 1949, disclosed to them his intention of selling the lands leased to them, and further stated that when defendant was at their home at about the time mentioned he stated that he would not, under any condition, convey the leased property until the expiration of the then current lease, on May 1, 1953, and they further testified that had defendant advised them of his intention to sell the land to Zele for $5000, they would have

purchased the same, and were ready, willing and able to do so upon the terms offered Zele.

Plaintiffs' testimony was corroborated in part by a witness called by them, and defendant was likewise corroborated in part by a witness called in his behalf.

The court made certain findings and entered its judgment and decree in favor of defendant. Among his findings is the following:

"That thereafter and during the years extension of said lease, to-wit: May 1st, 1948 to May 1st, 1949, the defendant on numerous occasions made further efforts to sell said leased lands to the plaintiffs but the plaintiffs refused to purchase the same and that during the month of February, 1949, the defendant had an offer of $5,000.00 from Frank Zele for said lands and the defendant agreed to sell said lands to the said Frank Zele for $5,000.00 providing the plaintiffs refused to purchase said lands for said price as they had a right to do under the extension of their lease, and after receiving said offer from Frank Zele and during the month of February, 1949, the defendant made a special trip from Pueblo, Colorado to the home of the plaintiffs located on the leased premises and advised them of the fact that he had this offer of $5,000.00 and that they could have the lands for that amount and that if they did not wish to purchase the lands for that amount that he was going to sell the same and at which time and place the plaintiffs refused to purchase the lands and advised the defendant they were going to build a home on other lands near by and that they would vacate the premises; whereupon, the defendant entered into a contract with Frank Zele for the purchase and sale of said lands for the sum of $5,000.00.

"That thereafter, and on February 2nd, 1949, the defendant notified the plaintiffs of the fact that he was selling said lands and that he had made arrangements for them to stay on the place for a period of sixty days in addition to the term of the extension of the lease.

"The Court further finds that the plaintiffs made no response whatsoever to this notice, never offered to purchase the land, never notified the defendant of their desire to purchase the land and without notice or warning of any kind whatsoever to the defendant and on April 1st, 1949 filed this suit herein.

"The Court further finds that the defendant herein has fully complied with all of the terms of his lease and the extension thereof, and has given to the plaintiffs all of the notices required to be given of his desire and intention to sell said lands and that the lease attached to plaintiffs' complaint and the extension thereof have expired and that the sixty days additional time voluntarily granted by the defendant to the plaintiffs, during which period of time they were permitted to remain on said lands, expired on June 30th, 1949."

Based upon these findings a judgment and decree were entered, as we have said, in favor of defendant, dismissing the action at plaintiffs' costs.

It will be noted that the trial court assumed in its findings that the lease and option was extended for a one-year period from May 1, 1948, instead of a five-year period terminating on May 1, 1953. In this the trial court was in error, and this error is admitted by defendant's counsel. However, it is inconceivable that such error on the part of the trial court was in any wise prejudicial to plaintiffs' interests.

It is well-settled that plaintiffs were entitled to exercise their option to purchase the premises in the lease described when defendant, during the term of the lease or an extension thereof, decided to sell the same, and it also is equally well-settled that under the option here plaintiffs were entitled to purchase the premises and had a first right so to do upon the same terms and conditions as were offered to any prospective purchaser. The sole question for the trial court's determination was whether the plaintiffs were afforded an opportunity of

exercising their rights under the option, and, if so, did they refuse?

The specifications of points are seven in number, being:

"I.

"The court erred in holding and finding that the lease, plaintiffs' exhibit A, was extended for one year only, and expired May 1, 1949.

"II.

"The court erred in holding and finding that on numerous occasions from May 1, 1943 to May 1, 1949, the defendant offered to sell, and the plaintiffs declined to buy the lands in question.

"III.

"The court erred in finding and holding that in February, 1949 the defendant offered to sell the lands in question to plaintiffs, and plaintiffs refused to buy the lands.

"IV.

"The court erred in finding and holding that on February 22, 1949, defendant notified plaintiffs he was selling the lands.

"V.

"The court erred in finding and holding that the defendant had complied with all the terms of the lease and the extension thereof.

"VI.

"The court erred in dismissing the complaint and adjudging that plaintiffs have no right in the property involved, or to the possession thereof.

"VII.

"The court erred in not finding the issues for the plaintiffs, and in not decreeing specific performance by the defendant to the plaintiffs."

All of the specifications challenge the sufficiency of the evidence to support the findings and judgment of the trial court.

■■ The evidence was in hopeless conflict, and in

this situation it became the duty of the trial court to weigh the same and determine therefrom the sufficiency thereof, its probative effect and weight, the credibility of the witnesses, and, having done so, make its findings and enter judgment accordingly. There is in the record ample competent evidence to support the trial court's findings and judgment, and nothing appearing to indicate that passion or prejudice entered therein, it is, under the oft-repeated holding of this court, our duty to approve the same.

Therefore, the judgment is affirmed.